NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0343n.06
Filed: June 18, 2008

No. 05-6116

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ADRIAN S. HOLMES, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **O P I N I O N** |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE:     SILER and COLE, Circuit Judges; and CLELAND, District Judge.[*]

**CLELAND, District Judge.**  Petitioner-Appellant Adrian S. Holmes appeals the district

court's denial of his motion to vacate pursuant to 28 U.S.C. § 2255.  All six of his claims are rejected

and the district court's judgment is affirmed.

**I.**

The relevant background facts were summarized in this court's opinion affirming Appellant's

conviction in his direct appeal:

> On January 13, 1998, Knoxville Police Department Officers Lawrence Lipscomb and
> Bruce Conkey observed Holmes driving in a high crime area of Knoxville,
> Tennessee. Officer Conkey knew Holmes from prior contacts and had reason to
> believe that Holmes was driving without a valid driver's license. During a stop that
> ensued, Officer Lipscomb saw Jarvis Bonner, a passenger in the car with Holmes,
> place a baggy containing crack cocaine on the rear floorboard. Holmes and Bonner
> were thereafter placed in separate police cars, where each was advised of his *Miranda*
> rights. Upon questioning, Bonner said that the cocaine in the baggy belonged to

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of
Michigan, sitting by designation.

Holmes. Holmes, on the other hand, disclaimed both knowledge and ownership of the cocaine. He explained that the vehicle he was driving belonged to his girlfriend, Shonta Wilson. Both men were transported to the Knoxville Police Department where *Miranda* warnings were again read to them. Each signed a waiver of his *Miranda* rights.

During subsequent questioning, Holmes at some point said: "I think I might need my lawyer." Officer Lipscomb immediately stopped all questioning of Holmes. When Holmes later tried to initiate a conversation with Officer Lipscomb, Officer Lipscomb explained that he could not talk with Holmes because Holmes had invoked his right to counsel. Holmes persisted, however, telling Officer Lipscomb that he wanted to make a statement without his lawyer being present. Holmes proceeded to say that the cocaine was his and that he wanted to cooperate if Officer Lipscomb would assist in getting the car returned to Wilson. Upon further questioning, Holmes acknowledged that he had been in the drug business since 1994; he identified many of his crack cocaine suppliers; and he agreed to a search of the residence that he shared with Wilson. Holmes later bonded out on state drug charges.

On January 21, 1998, a federal grand jury returned an indictment charging Holmes with possession of a controlled substance with the intent to distribute. On January 26, 1998, armed with an arrest warrant, officers went to Wilson's residence where they received Wilson's consent to search. Holmes was found hiding under a bed; a loaded .30-caliber M-1 carbine rifle was found in a hall closet. Wilson explained that Holmes told her that the rifle was to be used to kill Jarvis Bonner. Wilson also consented to a search of her car, where the officers found some of Holmes's clothes, including a shirt with a pocket containing a set of Tanita electronic scales.

After Holmes was arrested on January 26, 1998, a superseding indictment was returned, charging Holmes not only with possessing a controlled substance with intent to distribute but also with being a felon in possession of a firearm.

*United States v. Holmes*, No. 99-5189, 2000 WL 1033046, at *1 (6th Cir. July 19, 2000) (per curiam).

The case proceed to a jury trial and, after the government rested, Holmes's court-appointed attorney began his defense. *Id.* at *4. Holmes then informed the court that he wanted to fire his attorney and proceed *pro se*. *Id.* The district court found that Holmes knowingly and voluntarily waived his right to counsel, and allowed Holmes to proceed *pro se*, with his two court-appointed

2

attorneys remaining in the courtroom as stand-by counsel to assist Holmes. *Id.* The jury convicted Holmes on both the drug and firearm charges. *Id.* at *1.

Holmes appealed, arguing that: (1) the district court erred in denying a motion to suppress Holmes's January 13, 1998 confession; (2) the district court erred in denying a motion to sever the weapons charge from the drug trafficking charge; (3) the district court erred in denying Holmes's *Batson*[1] challenge to the government's use of a peremptory strike to exclude the only African-American venire member; (4) the district court abused its discretion by failing to allow Holmes to recall two witnesses during trial, refusing to issue compulsory process for these two witnesses and failing to *sua sponte* order a continuance of trial when Holmes elected, mid-trial, to proceed *pro se*.[2] *Id.* at *2-4. All of the raised issues were rejected, and Holmes's conviction was affirmed.

Holmes filed his motion under 28 U.S.C. § 2255 on September 24, 2001, and it was denied on July 8, 2005. Holmes filed a timely appeal on July 15, 2005. A certificate of appealability was granted as to all six issues raised in Holmes's § 2255 motion.

**II.**

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or

---

[1]*Batson v. Kentucky*, 476 U.S. 79 (1986).

[2]Holmes also argued, *pro se*, that the district court improperly allowed the government to ask leading questions and that Officer Conkey gave perjured testimony. *Holmes*, 2000 WL 1033046, at *4 n.1.

3

is otherwise subject to collateral attack." 28 U.S.C. § 2255. "In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Mallett v. United States,* 334 F.3d 491, 496-97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

We review *de novo* the district court's denial of Holmes's § 2255 motion, while examining the district court's factual findings for clear error. *Id.* at 497 (citing *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003)). Holmes's ineffective assistance of counsel claims are mixed questions of law and fact, and will be reviewed *de novo. Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984) and *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995)).

### III.

Holmes raises a variety of ineffective assistance of counsel claims. To prevail on a claim for ineffective assistance of counsel, Holmes must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Holmes can show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 690. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. To satisfy the prejudice prong, Holmes must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When reviewing the sufficiency of the evidence to support a criminal conviction, "the

4

relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). This standard places a "very heavy burden" upon a defendant making a sufficiency of the evidence challenge. *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000). "In addressing sufficiency of the evidence questions, this Court has long declined to weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994).

We first reject Holmes's contention that trial counsel failed to challenge the sufficiency of the evidence as to the drug offense. At the close of the Government's proof, trial counsel moved for a judgment of acquittal, which was denied. On the same day, Holmes asserted his right to proceed *pro se*. Contrary to Holmes's contention, his trial counsel *did* challenge the Government's proof prior to being released from duty.

Although appellate counsel did not challenge the sufficiency of the evidence, we find that any such challenge would have been futile. In order to prove possession with intent to distribute, the Government had to prove "knowing possession-actual, constructive, or joint-with intent to distribute." *United States v. Paige,* 470 F.3d 603, 609 (6th Cir. 2006) (citation omitted). The evidence submitted at trial against Holmes, including the proof of his own admission of guilt to the police, meets this standard. "Attacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Sanchez,* 928 F.2d 1450, 1457 (6th Cir. 1991). The jury was permitted to rely on the Government's evidence, in the form of officer testimony, as to Holmes's incriminating statements to the police shortly after his

arrest, as well as the testimony of Mr. Bonner. *See Holmes*, 2000 WL 1033046, *1. Under the facts presented to the jury, viewed in a light most favorable to the Government, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 . Accordingly, a challenge to the sufficiency of the evidence would have been futile, and Holmes's ineffective assistance of counsel claim must fail. *See Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999) ("[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues.").

**IV.**

Holmes next claims that his trial counsel was ineffective for failing to object to the venire panel.[3] Three sources provide a defendant with the right to a jury elected from a fair cross-section of the community: (1) the Jury Selection and Service Act ("JSSA"), 28 U.S.C. § 1861, (2) the Sixth Amendment and (3) the equal protection component of the Fifth Amendment. *See United States v. Allen,* 160 F.3d 1096, 1101 (6th Cir. 1998). The fair cross-section component of the JSSA and the Sixth Amendment are analyzed identically. *Id.* at 1102. "Whether a defendant has been denied his right to a jury selected from a fair cross-section of the community is a mixed question of law and fact, which we review de novo." *United States v. Buchanan*, 213 F.3d 302, 308 (6th Cir. 2000) (quoting *Allen*, 160 F.3d at 1101). In order to make a *prima facie* showing of a violation of the Sixth

---

[3]In his *pro se* supplemental brief, Holmes complains about the Government's use of a peremptory challenge to exclude the only African-American member of the petit jury. It does not appear that a certificate of appealability was granted on any challenge to the petit jury composition. Nonetheless, this issue was already considered on appeal and the district court's denial of Holmes's *Batson* challenge was upheld. *Holmes*, 2000 WL 1033046, *4. Holmes cannot "relitigate" this issue. *See DuPont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996) ("A §2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." (citations omitted)).

Amendment, a defendant must establish that: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process. *Id.* at 309-10 (quotation omitted). We reject this claim.

Another panel in this circuit has found, in an unpublished opinion, that the jury selection process in the Eastern District of Tennessee does not systematically exclude African-Americans. *United States v. Clark,* 112 F. App'x 481, 485-86 (6th Cir. 2004). In view of this decision, counsel's failure to raise a challenge to the jury venire was not deficient so as to constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. Even though *Clark* was issued after Holmes's trial, a failure to challenge the venire process which was later found to meet constitutional standards cannot be said to fall "outside the wide range of professionally competent assistance." *Id.* at 690. We reject Holmes's claim on this issue.

## V.

Holmes next argues that his trial counsel was ineffective for failing to object to two criminal history points added to his criminal history score. We deny this claim for three reasons. First, as a threshold matter, Holmes represented himself at sentencing, and only had an attorney present as stand-by counsel. Nonetheless, Holmes complains that his trial counsel, who was at the sentencing in the role of stand-by counsel, did not object to the calculation of Holmes's criminal history score. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel." *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). Holmes knowingly and voluntarily elected to assert his *Faretta* rights and

7

proceed at sentencing *pro se*. He does not challenge that waiver. Because he validly waived his right to counsel, his claim for ineffective assistance at sentencing fails. "By exercising his constitutional right to present his own defense, a defendant necessarily waives his constitutional right to be represented by counsel." *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008). Even if stand-by counsel failed to act in some manner, such failure is an incidental effect of Holmes's decision to assert his *Faretta* rights, and not the basis of an ineffective assistance of counsel claim. *See id.* at 697 ("To the extent [stand-by counsel] failed to act during trial, [the criminal defendant] merely suffered the consequences of his decision to proceed *pro se.*"). We will not impose upon stand-by counsel the same obligations that an attorney would have if Holmes were not proceeding *pro se*.

Second, despite the fact that Holmes represented himself at sentencing, his stand-by counsel submitted an objection to the criminal history category on Holmes's behalf. Holmes himself raised the same objection at the sentencing hearing. Thus, there was no failure to object to the calculation.

Finally, there is no merit to Holmes's underlying argument that he should not have received a two-level increase to his criminal history category. Holmes argues that the two underlying offenses were minor misdemeanors, but the trial court correctly concluded that they were properly counted under the guidelines. *See* U.S.S.G. § 4A1.2(c).

For all of these reasons, we reject Holmes's claim that his trial counsel was ineffective for failing to object to his criminal history calculation.

**VI.**

We also reject Holmes's fourth claim, in which he argues that his sentence on the felon-in-possession claim is unconstitutionally excessive and violates the rule set forth in *Apprendi v. New Jersey,* 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a

8

prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. In this case, the district court sentenced Holmes to the statutory maximum of 120 months imprisonment on the felon-in-possession conviction to run concurrent with the 180 months imprisonment sentence on the possession with intent to distribute conviction.

Holmes, while proceeding *pro se,* did not object to his sentence at the sentencing phase. While it is true that appellate counsel did not assert an *Apprendi* violation, the matter was deemed submitted on June 22, 2000, and *Apprendi* was not issued until June 26, 2000. In any event, "*Apprendi* by its terms applies only where the finding 'increases the penalty for a crime beyond the prescribed statutory maximum.'" *United States v. Lawrence*, 308 F.3d 623, 634 (6th Cir. 2002) (quoting *Apprendi*, 530 U.S. at 490)). Here, the statutory maximum for Holmes's gun conviction was 120 months, and the statutory maximum for his drug conviction was 240 months. *See* 21 U.S.C. § 841(b)(1)(C). We therefore find that his sentence did not violate *Apprendi*.

Nor do we find that Holmes's sentences, within the proscribed statutory limits, are unconstitutionally excessive. "[T]he Eighth Amendment only prohibits 'extreme sentences that are 'grossly disproportionate' to the crime.'" *United States v. Organek,* 65 F.3d 60, 63 (6th Cir. 1995) (quoting *United States v. Hill*, 30 F.3d 48, 50 (6th Cir. 1994)). Further, we "will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *Id.* (quoting *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995)).

We therefore reject Holmes's challenges to his felon-in-possession sentence.

## VII.

Holmes next contends that trial counsel failed to file a motion to suppress the fruits of an

alleged illegal stop of a vehicle Holmes was driving because Holmes contends the stop was not for any lawful purpose. This issue is completely devoid of merit.

Holmes argues that the stop was "pretextual," but an officer's actual motivation in conducting a traffic stop is immaterial, so long as the officer has probable cause to conduct the stop. *See Whren v. United States,* 517 U.S. 806, 812-813 (1996). Any motion to suppress based upon the "pretextual" traffic stop would have been frivolous. Moreover, as this court stated in Holmes's direct appeal, Holmes was stopped because "Officer Conkey knew Holmes from prior contacts and had reason to believe that Holmes was driving without a valid driver's license." *Holmes,* 2000 WL 1033046, *1. In rejecting Holmes's § 2255 claim below, the district court noted "[i]n fact, Officer Conkey testified at the suppression hearing [based on an alleged violation of *Edwards v. Arizona*, 451 U.S. 477 (1981)] that while he was following petitioner, and before the stop, he verified through a records check that petitioner's license was in fact revoked." *United States v. Holmes,* No. 01-453, 2005 WL 1606594, at *4 (E.D. Tenn. 2005). Indeed, during his closing, Holmes conceded he was driving on a revoked license. Trial counsel was not ineffective for failing to file a motion to suppress that would have been meritless.

**VIII.**

Finally, Holmes argues that his conviction under 18 U.S.C. § 922(g) is void for violation of the Tenth Amendment's separation of power between the states and the federal government. Holmes's claim appears to be a facial challenge of 18 U.S.C. § 922(g), which necessarily must fail because the decided law in this circuit is that § 922(g) is a valid exercise of congressional authority under the Commerce Clause. *See United States v. Henry,* 429 F.3d 603, 619 n.20 (6th Cir. 2005) (citing cases).

To the extent Holmes raises an as-applied challenge to § 922(g), we reject such a challenge. So long as Holmes "possessed a gun that previously had moved in interstate commerce" a sufficient nexus exists between Holmes's "conduct and interstate commerce to allow Congress to regulate [Holmes's] conduct pursuant to the Commerce Clause." *United States v. Chesney,* 86 F.3d 564, 572 (6th Cir. 1996). Testimony was presented at trial that the gun in question was manufactured in Florida and shipped in interstate commerce to Tennessee. "[T]he Commerce Clause requires no proof other than that the firearm or ammunition traveled in interstate commerce." *Henry*, 429 F.3d at 620. The Government met its burden in this case and we reject Holmes's challenge to § 922(g).

## IX.

For the reasons provided above, we affirm the district court's denial of Holmes's § 2255 motion.